# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 23-1207

DAVID C.L. WALTON,

*Plaintiff-Appellant,*

*v.*

ASHLEY NEHLS,

*Defendant-Appellee.*

Appeal from the United States District Court for
the Eastern District of Wisconsin.
No. 1:22-cv-00007-WCG — **William C. Griesbach,** *Judge.*

ARGUED OCTOBER 21, 2024 — DECIDED MAY 2, 2025

Before ROVNER, SCUDDER, and LEE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This appeal presents an issue of first impression for our court: whether, as a matter of Eighth Amendment law, a prisoner can consent to sexual activity with a prison official. David Walton, a Wisconsin prisoner, invoked 42 U.S.C. § 1983 and sued Ashley Nehls, a prison nurse, alleging that she violated his Eighth Amendment rights by engaging in a sexual relationship with him. But Walton also testified in his deposition that the relationship was consensual.

Relying on that testimony, the district court entered summary judgment for Nehls, reasoning that a consensual sexual relationship cannot constitute a cruel or unusual punishment under the Eighth Amendment.

On appeal Walton urges us to join the Sixth and Ninth Circuits and adopt a legal presumption that any sexual activity between a prisoner and prison official is nonconsensual and, by extension, violates the Constitution unless the prison official can show an absence of coercion. That position has much to say for itself, given the power and control prison officials have over inmates and considering today's standards of decency, as all 50 states have made a prison official's sexual conduct with a prisoner a crime. But even if we applied the presumption, the evidence in the record establishes that the alleged sexual relationship between Walton and Nehls lacked any coercive factors. We therefore AFFIRM the district court's entry of summary judgment for Nehls, saving for another day the question whether to adopt a presumption of nonconsent.

**I**

Walton alleges that he began a romantic and sexual relationship with Nehls in June 2021. He has always described the relationship as "consensual." Within three months, however, other officials at the prison learned of the relationship and immediately transferred Walton to a new institution. Walton, no longer in contact with Nehls, then brought the § 1983 action against her in federal court in Wisconsin.

Walton's lawsuit requires us to determine whether a relationship that he considered consensual nonetheless deprived him of his Eighth Amendment rights. That is no easy task, for neither Supreme Court precedent nor our own case law

squarely answers the question, and the circuits that have weighed in have taken differing approaches. We think the Sixth and Ninth Circuit's approach—presuming nonconsent and shifting the burden of establishing consent onto the defendant—very well could be the best answer. But we ultimately need not decide whether to adopt such an approach to resolve Walton's appeal.

### A

A prison official's conduct does not constitute cruel and unusual punishment in violation of the Eighth Amendment, the Supreme Court has explained, unless "two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the conduct "must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Conduct is sufficiently serious—or objectively harmful—if it is "incompatible with the evolving standards of decency that mark the progress of a maturing society" or "involve[es] the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (quoting *Estelle v. Gamble*, 428 U.S. 97, 102–03 (1976)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The official must act with "'deliberate indifference' to a substantial risk of serious harm" of which they are "subjectively aware." *Id.* at 828.

We first had occasion to apply those principles to allegations of prison sexual abuse in *Washington v. Hively*, 695 F.3d 641 (7th Cir. 2012). James Washington, a Wisconsin pretrial detainee, claimed that a guard had violated his Eighth Amendment rights by "gratuitously fondling" his genitals when conducting a pat down and strip search. *Id.* at 642. We recognize, of course, that today we would analyze

Washington's claim under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). But the distinction is of no moment for present purposes, since the Fourteenth Amendment similarly protects pretrial detainees from "abusive conditions." *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018).

In *Hively*, the district court had entered summary judgment against Washington on the ground that he had "presented evidence of only de minimis injury." 695 F.3d at 642. But we reversed, explaining that "[s]exual offenses forcible or not are unlikely to cause so little harm as to be adjudged *de minimis*." *Id*. at 643. Put differently, unwanted sexual contact, regardless of whether it involves force, is objectively harmful under the Eighth Amendment in light of the "significant distress and often lasting psychological harm" that it tends to cause. *Id.*

We also took care in *Hively* to emphasize the importance of the subjective intent inquiry. See *id.* at 643–44. We acknowledged that objectively harmful sexual conduct will not give rise to an Eighth Amendment violation when the defendant lacks the requisite subjective intent. See *id.* If, for instance, the defendant "had no intention of humiliating" the prisoner or "deriving sexual pleasure," but "was merely overzealous in conducting the pat down and strip search," there would be "no deliberate violation of a constitutional right and so no basis for the suit." *Id.* at 643. Still, we recognized that subjective intent, "unless admitted, has to be inferred rather than observed." *Id.* And we concluded that a reasonable jury could infer the guard's requisite intent based on the prisoner's allegation that "he complained vociferously … to no avail." *Id.* at

644. After all, such conduct, "if correctly described," could not "be thought a proper incident of a pat down or search." *Id.*

More recently, in *J.K.J. v. Polk County*, we upheld a jury's award of damages against a prison guard who repeatedly sexually assaulted two prisoners. See 960 F.3d 367, 376 (7th Cir. 2020) (en banc). We explained that, based on the evidence at trial, it "was more than reasonable for the jury to conclude" that the guard "acted with deliberate indifference to an excessive risk" to the health and safety of the two prisoners. *Id.* We also rejected the guard's contention that the trial court "erred in not giving a special instruction on his consent defense." *Id.* No such instruction was necessary, we reasoned, because had "the jury bought" the guard's story that the prisoners "were willing participants (and, for that matter, even capable of being willing participants under the circumstances)," it would not have found that the guard "acted with deliberate indifference to their safety and well-being." *Id.*

*Hively* and *J.K.J.* supply a few takeaways. For one, it is of no legal moment that Walton did not allege that Nehls used force against him. Force or no force, unwanted sexual contact between a prison official and prisoner is objectively harmful under the Eighth Amendment. Nehls's subjective intent, though, remains relevant. As in any other Eighth Amendment sexual abuse case, Walton (the prisoner) must establish that Nehls (the prison official) acted with deliberate indifference to an excessive risk of harm to his safety or well-being.

Yet we have not encountered the particulars of the scenario before us here. Unlike the inmates in *Hively* and *J.K.J.*, Walton admits that he consented to a sexual relationship with Nehls. But given the inherent coerciveness present in a prison environment, Walton's argument goes, the relationship was

nevertheless legally nonconsensual. It is on those allegations that we must decide whether a reasonable jury could conclude that Nehls's conduct was objectively harmful and that she acted with deliberate indifference to an excessive risk to Walton's well-being.

### B

Other circuits have faced similar factual allegations in Eighth Amendment cases, but they have not reached a uniform conclusion. In *Wood v. Beauclair*, a district court entered summary judgment against a prisoner on the basis that the prisoner's "romantic relationship" with a prison guard "was consensual." 692 F.3d 1041, 1043 (9th Cir. 2012). The Ninth Circuit reversed, emphasizing "[t]he power dynamics between prisoners and guards" and questioning whether "sexual relationships in prison" are "truly the product of free choice." *Id.* at 1047. At the same time, the court expressed "concern[] about the implications of removing consent as a defense for Eighth Amendment claims," ultimately deciding that "the better approach" was "a rule that explicitly recognize[d] the coercive nature of sexual relations in the prison environment." *Id.* at 1048–49.

Aligned with that principle, the Ninth Circuit adopted the following framework for Eighth Amendment sexual abuse cases:

> [W]hen a prisoner alleges sexual abuse by a prison guard, we believe the prisoner is entitled to a presumption that the conduct was not consensual. The state then may rebut this presumption by showing that the conduct involved no coercive factors. We need not attempt to

> exhaustively describe every factor which could be fairly characterized as coercive. Of course, explicit assertions or manifestations of non-consent indicate coercion, but so too may favors, privileges, or any type of exchange for sex. Unless the state carries its burden, the prisoner is deemed to have established the fact of non-consent.

*Id.* at 1049.

The Sixth Circuit has since followed suit, adopting wholesale the Ninth Circuit's presumption in a sexual abuse case—albeit one concerning the alleged deprivation of a pretrial detainee's Fourteenth (as opposed to Eighth) Amendment rights. See *Hale v. Boyle County*, 18 F.4th 845, 852, 854 (6th Cir. 2021).

The Eighth and Tenth Circuits have charted a different course, though, declining to adopt a presumption and leaving prisoners with the burden of establishing nonconsent. "To state a plausible constitutional claim" in the Eighth Circuit, "a prisoner who recounts sexual contact that is outwardly consensual must allege at least some manifestation of resistance by the prisoner or some act of coercion by the corrections official." *Richardson v. Duncan*, 117 F.4th 1025, 1030 (8th Cir. 2024). The Tenth Circuit has echoed the Eighth Circuit, stating that "in this circuit, the burden remains on the plaintiff—not the defendant—to establish that sexual conduct is nonconsensual." *Works v. Byers*, 128 F.4th 1156, 1162 (10th Cir. 2025).

C

In time, the Supreme Court is sure to resolve the split. And, while this case does not compel us to choose a side, we

do see many reasons for why a presumption of nonconsent may prove to be the right answer to a difficult question.

Supreme Court precedent is clear that bedrock Eighth Amendment principles require us to assess a prison official's conduct against "the evolving standards of decency that mark the progress of a maturing society." *Hudson*, 503 U.S. at 8 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Recall that conduct is objectively harmful (and therefore may give rise to an Eighth Amendment violation) when it is "incompatible" with such standards. *Id.* at 10 (quoting *Estelle*, 429 U.S. at 102–03). "[R]eview under those evolving standards," the Supreme Court has explained, "should be informed by 'objective factors to the maximum possible extent.'" *Atkins v. Virginia*, 536 U.S. 304, 312 (2002) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1000 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). And the "clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Id.* at 312 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 331 (1989)).

It is telling, then, that the legislatures in all 50 states (plus the District of Columbia) have made it a crime for prison officials to engage in sexual activity with prisoners—regardless of consent. The Appendix to this opinion lists each state's statute. Federal law similarly makes it a criminal offense for a federal law enforcement officer to "knowingly engag[e] in a sexual act" with a prisoner, regardless of consent. 18 U.S.C. § 2243(b); see also *United States v. Martinez*, 110 F.4th 160, 166 (2d Cir. 2023) (explaining that 18 U.S.C. § 2243(b) "prohibits sexual acts between an inmate and a guard regardless of the inmate's consent to such acts"). So the takeaway is clear: our country's legislatures have determined that sexual activity

between prisoners and prison officials is a crime, intolerable conduct in a civilized society.

The aligned judgment of elected officials at the state and national level is consistent with Eighth Amendment jurisprudence recognizing the inherently vulnerable position of prisoners, especially in relation to prison officials. The prison environment, the Supreme Court has underscored, "strip[s]" prisoners "of virtually every means of self-protection and foreclose[s] their access to outside aid." *Farmer*, 511 U.S. at 833. We recognized that same reality in *J.K.J.*, explaining that prisoners depend on prison officials "for nearly everything in their lives—their safety as well as their access to food, medical care, recreation, and even contact with family members." 960 F.3d at 381.

But these observations invite yet another question: why not conclude that, as a matter of Eighth Amendment law, a prisoner can *never* consent to a sexual relationship with a prison official? After all, at first glance, such a *per se* rule would comport with both the judgment of our country's legislatures and Eighth Amendment case law recognizing the inherent vulnerability of prisoners.

We are mindful, however, that the Supreme Court has instructed courts to "proceed cautiously in making an Eighth Amendment judgment." *Rhodes*, 452 U.S. at 351. Any determination that certain conduct constitutes a *per se* violation of the Eighth Amendment "cannot be reversed short of a constitutional amendment." *Gregg v. Georgia*, 428 U.S. 153, 176 (1976). A *per se* nonconsent rule would run counter to the Supreme Court's instruction by broadly and indeed categorically expanding Eighth Amendment liability in one fell swoop—

without regard to the unique factual circumstances that could arise in future cases.

Determining the scope of a constitutional right, moreover, can be an endeavor ill-suited to an overly formalistic or categorical approach. See, *e.g.*, *Florida v. Bostick*, 501 U.S. 429, 439 (1991) (rejecting a "*per se* rule" in a Fourth Amendment case and explaining that "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances"). That observation rings particularly true when it comes to the Eighth Amendment, which "draw[s] its meaning from … evolving standards of decency" and, as a result, "admits of few absolute limitations." *Hudson*, 503 at 8 (alteration in original) (quoting *Rhodes*, 452 U.S. at 346). Put differently, because evolving standards of decency define the Eighth Amendment's scope, Eighth Amendment cases require a flexible approach that is not often compatible with *per se*, broadly applicable rules.

A burden-shifting presumption may well align better with the sort of flexible approach that constitutional law requires. Indeed, the Supreme Court frequently applies such presumptions when fleshing out the scope of constitutional rights. In *New York State Rifle & Pistol Ass'n v. Bruen*, for example, the Court explained that the Second Amendment "presumptively protects" the individual right to bear arms. 597 U.S. 1, 24 (2022). For that reason, if a government regulation bars or otherwise limits that right, the government bears the burden of "justify[ing] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

And in the Fourth Amendment context, the Supreme Court has long held that "[w]arrantless searches are

presumptively unreasonable." *United States v. Karo*, 468 U.S. 705, 717 (1984). Under that presumption, the government bears the burden of showing that a warrantless search was nevertheless constitutional. See *Chimel v. California*, 395 U.S. 752, 761 (1969).

Even the tiers of scrutiny, ubiquitous in First and Fourteenth Amendment jurisprudence, operate as burden-shifting presumptions. Under the First Amendment, content-based laws are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). For any content-based restriction or regulation, then, the government bears the burden of establishing that it is "narrowly tailored to serve compelling state interests." *Id.* Racial classifications are likewise "presumptively invalid" under the Fourteenth Amendment's Equal Protection Clause. *Pers. Adm'r v. Feeney*, 442 U.S. 256, 272 (1979). It is therefore the government that bears the burden of establishing the legitimacy of any such classifications. See *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

The prevalence of burden-shifting presumptions in these contexts is perhaps unsurprising. It reflects the reality that the Constitution's provision of individual rights can be broad and that giving content to those rights is not always a straightforward exercise. But knowing that the Constitution protects "the right of the people to keep and bear Arms," to be free from "unreasonable searches and seizures," to enjoy "the freedom of speech," or take comfort in "the equal protection of the laws" is one thing. U.S. Const. amends. I, II, IV, XIV. Knowing exactly when official action infringes on any of those individual rights is another. The latter requires evaluating both the official action as well as the nature of the alleged

infringement on the individual. Under such an evaluation, the government's justification (or historical basis) for a particular action is of course relevant. But the law will often place a thumb on the scale in favor of the individual—especially when the official action "appears on its face within a specific prohibition of the law." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938); see also *District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008) (citing *Carolene Products* and explaining that something more than rational basis review must "be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms").

In the Eighth Amendment context, a presumption of nonconsent may fit comfortably within the line of constitutional cases applying burden-shifting frameworks. Our own case law establishes that a prison official who engages in a nonconsensual sexual relationship with a prisoner runs afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. See *J.K.J.*, 960 F.3d at 376. Presuming that any such sexual relationship is nonconsensual, then, would be tantamount to presuming that a prison official has violated the Eighth Amendment—a presumption that aligns with both the judgment of our nation's legislatures and the inherently coercive prison environment.

Yet before we can adopt a presumption of nonconsent, several difficult questions need answering. Start with determining what conduct triggers the presumption. We have observed that sexual conduct need not involve the use of force to be objectively harmful. See *Washington*, 695 F.3d at 643. But how, exactly, should we define sexual conduct? Some conduct

is obviously sexual in nature, but what about a kiss or touch of the thigh? Alternatively, what about nonphysical conduct, such as indecent exposure or verbal harassment? Relatedly, should the presumption apply to *all* prison officials? Or should we limit it to only those officials capable of affecting or influencing a prisoner's conditions of confinement? And if we do so limit the presumption, how do we determine whether an official satisfies that standard?

Given the difficulty of those questions (and the no doubt many others that will arise), we are hesitant to adopt a presumption of nonconsent, especially once we return to the facts before us.

## II

Even if we applied a presumption of nonconsent, Nehls would be able to overcome it based on the facts in the record. In the end, then, this case does not present the best vehicle for working out the dimensions of a presumption framework for future Eighth Amendment prison sexual abuse cases.

### A

Walton alleges that, over the course of three months or so beginning in June 2021, he and Nehls were in a romantic and sexual relationship. For her part, Nehls denies that she was ever romantically or sexually involved with Walton. But because this appeal comes to us from the district court's entry of summary judgment in Nehls's favor, we recount the facts in the light most favorable to Walton. See *Hackett v. City of South Bend*, 956 F.3d 504, 506 (7th Cir. 2020).

The relationship began in June 2021, when Walton visited the prison's health services unit to receive prescription medication from Nehls. While giving Walton the medication,

Nehls touched his arm. In response, Walton joked, "You touch me like that, I might touch you." Nehls replied, "All right," and grabbed Walton's shirt. Walton and Nehls then kissed each other.

Walton continued to visit Nehls at the health services unit, where the two would kiss "almost every single day." Walton sometimes initiated the kissing. Walton also says Nehls touched his penis over his clothing at times and "allow[ed]" him to touch her chest and buttocks over her clothing. Walton compared their interactions to "two high school kids making out."

Throughout the course of their relationship, Nehls provided Walton with illegal contraband, including chips, candy, chewing gum, a cell phone, and an unprescribed antidepressant. Nehls never asked Walton for anything in return.

Walton described the relationship as "consensual," and explained that "outside of the prison," he would consider Nehls his "girlfriend." He did not report the relationship because he "enjoyed it," wanted it to continue, and did not want himself or Nehls "to get into trouble."

Despite his wishes, the relationship did not continue. Walton last visited Nehls on August 30, 2021. On that day, Walton and Nehls began kissing in a private room within the health services unit. Nehls then closed the door and touched Walton's penis underneath his clothing with her bare hand—an interaction that Walton described as "consensual." At one point, Walton joked about letting a correctional officer "catch" them. Nehls responded by threatening to sound an alarm that would warn correctional officers of an ongoing assault. Walton then reached out toward Nehls, who stepped back and

then fell to the floor. As Walton bent down over Nehls, several correctional officers entered the private room and discovered them.

Prison officials transferred Walton to another institution the next day. Since his transfer, he has had no contact with Nehls. In his complaint, he alleged that his relationship with Nehls triggered post-traumatic stress disorder, anxiety attacks, and self-harm.

B

Against those facts, the district court did not err in entering summary judgment for Nehls. Walton implores us to reverse the district court on the ground that it should have applied the Ninth Circuit's presumption of nonconsent. But even if the district court had done so, summary judgment would have been proper. Nehls would be able to meet the burden of showing that the relationship was consensual. Walton has never deviated from describing their encounters as "consensual" and even acknowledged initiating some of the sexual conduct. He also stated that he "enjoyed" the relationship and wanted it to continue.

To be sure, Nehls provided Walton with contraband—conduct that under many circumstances can be coercive. See *Wood*, 692 F.3d at 1049 (identifying "favors, privileges, or any type of exchange for sex" as indicators of coercion). But Walton explained that Nehls did not expect anything in return. And nowhere has he suggested that Nehls provided the contraband in exchange for sexual contact.

Having taken a close look at the evidentiary record, we see nothing that would allow a jury to find that Nehls coerced Walton into a sexual relationship. The closest evidence of

coercion is a declaration Walton submitted to the district court, stating that, at one point in July 2021, Nehls "got upset" with him and "fals[e]ly" had him "placed on temporary lock[] down." Walton also attached an incident report that Nehls filled out, accusing him of making inappropriate comments about "a female staff member." But Walton did not submit any evidence connecting the incident report to a theory of coercion. He did not, for instance, allege that he continued with the relationship out of fear that Nehls would submit another report or otherwise get him in trouble. To the contrary, he continued to describe their later interactions as consensual.

Absent evidence of coercion, we are left with Walton's clear, consistent, and unqualified statements that his relationship with Nehls was consensual. Those statements would be sufficient to overcome any presumption that the relationship was nonconsensual. We can therefore save the broad legal question for another day.

*   *   *

We recognize the fundamental power imbalance between prison officials and prisoners and the inherently vulnerable position of prisoners. But deplorable as Nehls's alleged conduct may be, we cannot on this record say that she knew of and was deliberately indifferent to an excessive risk that her conduct would seriously harm Walton. In the final analysis, then, we cannot say that Nehls's conduct constitutes an Eighth Amendment violation. So with this closing observation we AFFIRM the district court's entry of summary judgment for Nehls.

No. 23-1207                                                   17

# Appendix

In 26 states plus the District of Columbia, statutes make it a criminal offense for prison officials to engage in sexual activity with prisoners and explicitly state that consent is not an affirmative defense:

| State | Relevant Statute |
|---|---|
| Alabama | Ala. Code § 14-11-31 |
| Arkansas | Ark. Code Ann. § 5-14-126 |
| California | Cal. Penal Code § 289.6 |
| Delaware | Del. Code Ann. tit. 11, § 780A |
| District of Columbia | D.C. Code Ann. §§ 22-3014, -3017(a) |
| Florida | Fla. Stat. Ann. § 944.35(3)(b) |
| Georgia | Ga. Code Ann. § 16-6-5.1 |
| Illinois | 720 Ill. Comp. Stat. 5/11-9.2 |
| Indiana | Ind. Code Ann. § 35-44.1-3-10 |
| Kansas | Kan. Stat. Ann. § 21-5512 |
| Kentucky | Ky. Rev. Stat. Ann. §§ 510.020(3)(f), .120(1)(c) |
| Massachusetts | Mass. Gen. Laws Ann. ch. 268, § 21A |
| Minnesota | Minn. Stat. Ann. §§ 609.341, subd. 24(2)(viii), 609.345 |
| Mississippi | Miss. Code Ann. § 97-3-104 |
| Missouri | Mo. Ann. Stat. § 566.145 |
| Montana | Mont. Code Ann. § 45-5-502 |
| Nebraska | Neb. Rev. Stat. Ann. § 28-322.01 |

| | |
|---|---|
| New Hampshire | N.H. Rev. Stat. Ann. §§ 632-A:2, -A:4 |
| New York | N.Y. Penal Law § 130.05(3)(e)–(f) |
| North Carolina | N.C. Gen. Stat. Ann. § 14-27.31 |
| Oregon | Or. Rev. Stat. Ann. §§ 163.452, .454 |
| Pennsylvania | 18 Pa. Cons. Stat. Ann. § 3124.2 |
| South Carolina | S.C. Code Ann. § 44-23-1150 |
| Utah | Utah Code Ann. §§ 76-5-412, -412.2 |
| Washington | Wash. Rev. Code Ann. §§ 9A.44.160, .170 |
| West Virginia | W. Va. Code Ann. §§ 61-8B-2, -10 |
| Wisconsin | Wis. Stat. Ann. § 940.225(2)(h), (4) |
| Wyoming | Wyo. Stat. Ann. §§ 6-2-303(a)(vii), -307(b) |

The remaining 24 states make it essentially a strict liability offense for prison officials to engage in sexual activity with prisoners, omitting consent as an available affirmative defense.

| **State** | **Relevant Statute** |
|---|---|
| Alaska | Alaska Stat. §§ 11.41.427(a)(1), .432 |
| Arizona | Ariz. Rev. Stat. Ann. §§ 13-1407, -1419 |

| Colorado | Colo. Rev. Stat. Ann. § 18-7-701 |
| --- | --- |
| Connecticut | Conn. Gen. Stat. Ann. §§ 53a-65(3), 54a-73a(a)(1)(E) |
| Hawaii | Haw. Rev. Stat. Ann. § 707-732 |
| Idaho | Idaho Code Ann. § 18-6110 |
| Iowa | Iowa Code Ann. § 709.16 |
| Louisiana | La. Stat. Ann. § 14:134.1 |
| Maine | Me. Rev. Stat. Ann. tit. 17-A, § 255-A(1)(I) to -A(1)(J) |
| Maryland | Md. Code Ann., Crim. Law § 3-314(b) |
| Michigan | Mich. Comp. Laws Ann. § 750.520c(1)(i) |
| Nevada | Nev. Rev. Stat. Ann. § 212.187 |
| New Jersey | N.J. Stat. Ann. § 2C:14-2(c)(2) |
| New Mexico | N.M. Stat. Ann. § 30-9-11(E)(2) |
| North Dakota | N.D. Cent. Code Ann. §§ 12.1-20-06, -07 |
| Ohio | Ohio Rev. Code Ann. § 2907.03(A)(6) |
| Oklahoma | Okla. Stat. tit. 21, § 1111(A)(7) |
| Rhode Island | R.I. Gen. Laws § 11-25-24 |
| South Dakota | S.D. Codified Laws §§ 22-22-7.6, 24-1-26.1 |
| Tennessee | Tenn. Code Ann. § 39-16-408 |
| Texas | Tex. Penal Code Ann. § 39.04 |
| Vermont | Vt. Stat. Ann. tit. 13, § 3257(a)(1) |

| Virginia | Va. Code Ann. §§ 18.2-64.2, -67.4 |